# EXHIBIT 4

*Original be*
*Lovejoy Unterlage*
*4*

# Distribution, License and Cooperation Contract

## between

## Lovejoy, Inc.
### (located at 2655 Wisconsin Ave, Downers Grove, IL 60515, USA) hereafter referred to as Lovejoy

## and

## ROSTA AG
### (located at Hauptstrasse 58, CH 5502 Hunzenschwil, Switzerland) hereafter referred to as ROSTA

## Introduction

The following contract replaces all previous contracts and agreements regarding the contract subjects made between Lovejoy and ROSTA. This contract addresses in 5 sections the following subjects:

- distribution of ROSTA products in the territories of the USA and Mexico
- manufacturing license from ROSTA to Lovejoy
- supply of semi-products used for the manufacturing of ROSTA products
- operation of ROSTA LLC
- general rules

## Section I: Distribution of ROSTA products in the USA and Mexico

### 1. Definitions

| | |
|---|---|
| **Products:** | ROSTA tensioners and motor bases; other ROSTA products in in agreement with the rules of Appendix I-1 |
| **Territory:** | United States of America and Mexico |
| **Target Industries:** | Lovejoy's target industries for the coupling market: mobile off road, pumps, pulp & paper, aggregate/mining (excluding screen manufacturers), steel, utilities, gear boxes, compressors, generator sets |
| **ROSTA LLC** | ROSTA LLC, a company jointly owned by the Michael Hennessy Discretionary Trust, UAD 10/7/85, and ROSTA AG |

### 2. Distribution Rights and Obligations

ROSTA grants Lovejoy a non-exclusive right to sell defined Products in the Territory to customers in their Target Industries. Lovejoy is obliged to use its best efforts to increase sales of ROSTA products in the Territory.  The only other right to sell in said Territory shall be given to ROSTA LLC. The operation of ROSTA LLC is described in Section IV. The exact boundaries between Lovejoy and ROSTA LLC can be found in the table of Appendix I-1.

### 3. Product Manager/Employees of LLC

The Product Manager and sales engineers will be formally employed by Lovejoy, however they report within the command line of LLC. This arrangement can be changed at a later date upon agreement of ROSTA and Lovejoy. The parties agree that Lovejoy will share the Product Manager of ROSTA LLC for the promotion of Products in the Territory. The parties agree that LLC will reimburse Lovejoy for the cost of employees, with Lovejoy bearing 40 % of the cost of the Product Manager. The employment agreement and dismissal of a Product Manager is subject to unanimous approval of ROSTA AG and Lovejoy.

### 4. Advertisement

It is understood that ROSTA, LLC will promote and pay for advertising on elements and Lovejoy will promote and pay for advertisements on tensioners and motor bases.  The cost of any joint advertisements or promotions will be split between ROSTA, LLC and Lovejoy in proportion with their annual sales budgets for ROSTA products, if both companies stand to benefit from such advertisements or promotions.

ROSTA will supply to Lovejoy the ROSTA LLC promotional materials (e.g. catalogues pamphlets, CD-ROM) in English language required to promote sales of ROSTA products.

## 5.  Product Sourcing

As described in Section II of this contract, Lovejoy has the right to manufacture under licence certain tensioners and parts of motor bases (called Licensed Products). Lovejoy will purchase other ROSTA standard tensioners and motor bases from ROSTA AG according to the actual valid ROSTA Partner Price List. Lovejoy will sell these products under their own account. Lovejoy is obliged to keep these products in adequate quantities in stock. All other ROSTA products Lovejoy sells, will be purchased from ROSTA LLC.

## 6.  Information Exchange

Both parties will exchange important information such as product development, sales materials or new applications regularly, openly and completely.

## 7.  Competitive Products

Lovejoy is not allowed to sell, distribute or manufacture products which are in direct competition with all ROSTA products, except in cases where ROSTA has given prior approval.

## 8.  Other Territories

Lovejoy is not allowed to sell directly or knowingly sell indirectly ROSTA'(s)-products (purchased or manufactured under this agreement) outside the Territory, except in cases where ROSTA has given prior approval.

## 9.  Terms of Delivery and Payment

For products supplies from ROSTA AG:

| | |
|---|---|
| Delivery: | free Swiss border, exclusive of any duties and taxes, seaworthy packing not included |
| Payments: | in CHF, 60 days net from date of invoicing |

For product supplies from ROSTA LLC:

| | |
|---|---|
| delivery: | ex stock, unpacked |
| Payments: | in USD, 30 days net from date of invoicing |

## Section II: Manufacturing License of ROSTA Products

1.   **Definitions**

| | |
|---|---|
| **Licensed Products** | ROSTA products manufactured by Lovejoy using approved raw materials and/or ROSTA products and corresponding manufacturing methods |
| **Raw Materials** | Materials approved by ROSTA used to produce **Licensed Products** |
| **Royalty** | amount of money paid by Lovejoy per manufactured ROSTA tensioner |

2.   **Licensed Products**

The Licensed Products include the following:

- ROSTA standard tensioners size PT 7, PT 11, SE 11, SE 15, SE 18, SE 27
- Harris tensioner
- supports, motor plates and pretensioning devices used in Motor bases MB 27, 50, and 70.

Licensed products shall be produced by Lovejoy using approved Raw Materials as defined in Art. 3. The quality and technical execution of Licensed Products shall be equivalent to the ROSTA-standards. Lovejoy is responsible for a regular scheduled quality control of their Licensed Products. This will be verified by regular testing of Licensed Products at ROSTA AG.

The ROSTA name has to be clearly legible on all Licensed Products (see Section V).

Upon permission of ROSTA Lovejoy can expand their Licensed range to other ROSTA products.

3.   **Raw Materials**

For the production of Licensed Products Lovejoy must use the following Raw Materials:

For tensioners:

- rubber parts supplied by ROSTA AG in appropriate dimensions (diameter and cut to length) and quality

- tensioner arms supplied by ROSTA AG in appropriate dimensions and quality

- housings (produced by Lovejoy) in the same quality as ROSTA is specifying and purchasing them from Lovejoy

For motor bases:

- complete DR-Elements supplied directly by ROSTA AG in corresponding length

- metal parts from third parties in corresponding quality to the ROSTA original parts (kit II to V)

The supply of Raw Materials is defined in Section III of this contract.

## 4.   Royalty

For each tensioner manufactured by Lovejoy a royalty has to be paid. The amount depends on the unit size and is specified in Appendix II - 1. The amount is based on the Swiss cost index, and shall be adjusted every Jan. 31st for that year. It will only be adjusted if the accumulated difference will be more than 5 index points over or under the last change.

The royalty is due quarterly. Lovejoy will calculate the amount themselves and inform ROSTA on the number of elements sold.

## 5.   Sales of Licensed Products

Lovejoy is allowed to sell licensed products directly or through ROSTA LLC within the Territory as defined in Section I -1.

## 6.   Termination of Manufacturing License

ROSTA has the right to immediately terminate this license agreement if Lovejoy fails to cure the following defaults within 60 days after receiving a written notice from ROSTA:

- Lovejoy is using unapproved material
- Lovejoy is modifying the products without prior written approval
- Lovejoy fails to affix the ROSTA name to Licensed Products
- Lovejoy fails to pay royalties when due

## 7.   Warranty of Licensed Products

Lovejoy shall not issue to customers any warranty in the name of or binding ROSTA in connection with all products produced and sold under this License.

## Section III: Supply of Raw Materials

### 1.    Definitions

This Section III governs the terms of transfer of raw materials between the Parties. For the purpose of this Section III, the term Raw Materials shall mean any or all the following:

| | |
|---|---|
| **Housings** | Housings for SE-11 to SE-27, PT-7 an PT-11 produced by Love-joy in sintered metal or glass reinforced nylon |
| **Rubber Inserts** | Pieces of RUBMIX 10 in diameters used for the manufacturing of SE-11 to SE-27, cut to length by ROSTA |
| **Tensioner Arms** | Welded construction consisting of inner square and lever arm produced by ROSTA used for the manufacturing of SE-11 to SE-27 |

### 2.    Agreement

ROSTA agrees to produce and sell at lowest possible price **Rubber Inserts** and **Tensioner Arms** to Lovejoy. Lovejoy agrees to produce and sell at lowest possible price **Housings** to ROSTA.

Lowest possible price shall mean direct material and labor cost including manufacturing overhead, but without overhead for sales and management (details see in App. III-1). Price/quality relation shall in any case be competitive with industry standards.

The selling party shall inform the buying party about the optimum lot size in order to minimize cost. The buying party shall inform the selling party latest by Oct. 31st about the estimated demand for the coming year and the proposed buying schedule (frame contract). Any deviations from the frame contract are to be reported to the other party as soon as that fact becomes known. Any price modification has to be announced with at least six months advance notice.

The selling party warrants the quality of its Raw Materials sold to the other party (see clause 4 below).

### 3.    Terms of Delivery and Payment

For **Raw Materials** supplied by ROSTA AG:

Delivery:    free Swiss border, exclusively any duties and taxes, seaworthy packing not included.

Payments: in CHF 60 days net from date of invoicing

For **Raw Materials** supplied by Lovejoy:

Delivery:    free US border, exclusively any duties and taxes, seaworthy packing

not included.

Payments: in USD 60 days net from date of invoicing

Lovejoy and ROSTA, AG agree to annually review each company's respective currency exposure based on the coming year's estimated purchase volume from the other company. If the companies agree, a "currency exchange rate clause" can be added to the Agreement.

## 4.   Warranty

ROSTA's warranty for Raw Materials is limited to the design and manufacture of these materials supplied to Lovejoy. Lovejoy's warranty for Raw Materials is limited to the design and manufacture of these materials supplied to ROSTA. Each party is respectively responsible for the warranty of the end [final] product each manufactures and sells to their respective customers save and except to the extent that a claim derives directly from a raw material supplied by the other party, in which case and to that limit the other party shall indemnify the party which sold the final product. In no circumstance will either party be liable to the other for indirect or consequential damages, including, without limitation, loss of profits. This warranty shall cover quality of materials and workmanship and shall be the sole warranty provided by the parties respectively as aforesaid, all other warranties implied by law, including without limitation, merchantability and fitness for purpose, being hereby excluded.

# Section IV: Operation of ROSTA LLC

## 1.   Definitions

ROSTA LLC         ROSTA LLC, a company jointly owned by Michael Hennessy
                  Discretionary Trust UAD 10/7/85, and ROSTA AG

## 2.   Operation

Lovejoy, Inc. is aware of ROSTA LLC. The target of the operation of this company is to significantly increase the sales for ROSTA products in accordance with the Business Plan. Therefore ROSTA LLC will sell to ROSTA target industries (as defined in Appendix IV - 2) and all industries which are not Lovejoy target industries. The exact boundaries between Lovejoy and ROSTA LLC can be found in the table of Appendix I - 1.

ROSTA LLC's staff will include a Product Manager. This person will simultaneously act as product manager for the ROSTA sales within Lovejoy. ROSTA LLC can purchase administrative services from Lovejoy, Inc. and ROSTA AG. These agreements are made under a separate contract.

## 3.    Declaration

By signing this contract both Lovejoy, Inc. and ROSTA AG acknowledge the existence of ROSTA LLC. Both signing parties will undertake everything to grow ROSTA LLC.

## 4.    Purchasing / Inventory / Transfer Pricing

Lovejoy will keep an inventory of all standard ROSTA tensioners and motor bases. Lovejoy will manufacture certain tensioner sizes and motor base parts under license from ROSTA AG. All other tensioners and motor bases (Assembly Kit 1) Lovejoy will purchase from ROSTA AG. Lovejoy will sell manufactured tensioners and motor bases to ROSTA LLC for resale at fully loaded manufacturing costs (incl. packaging and bolt) plus  25 % handling fee. Larger tensioners and motor bases purchased from ROSTA AG are sold by Lovejoy to ROSTA LLC at ROSTA export price (LLC export price list) plus landed costs (duty/freight at 12 %) plus costs for bolt and packaging plus 15 % handling fee. Larger requests (>20'000 USD per year) will be individually reviewed by ROSTA LLC and Lovejoy.

ROSTA LLC will keep an inventory of all other ROSTA standard elements, as required, purchased from ROSTA AG. They will sell elements to Lovejoy for resale at ROSTA export price (LLC export price list) plus landed costs (duty/freight at 12 %)  plus 25 % handling fee.

Special elements or special tensioners manufactured by ROSTA AG or Lovejoy (if approved by ROSTA, AG) will be sold directly to the final seller (Lovejoy or ROSTA LLC) without transfer via ROSTA LLC or Lovejoy respectively.

## 5.    Use of ROSTA name and trademark

ROSTA LLC shall be authorized and required to use the ROSTA name in its corporate name and to use or affix the ROSTA trademark in and to all catalogues, advertisements, letterheads and like documentation and all products sold by LLC as manufactured and supplied in accordance with this Agreement, as long as ROSTA maintains ownership of at least 50% or until the termination of this Agreement, whichever first occurs.

The trade mark ROSTA as well as the logo  are registered in the USA. In order to provide adequate protection of the trade mark sign and to follow regulations, ROSTA LLC has to use the ® - sign on all its advertisements and brochures when using the ROSTA-mark or label. Concerning the correct use and presentation of the ROSTA-name and trademark, ROSTA LLC has to consult the ROSTA marketing manual.

ROSTA LLC shall not be entitled to utilize the ROSTA name and trademark for any other purposes whatsoever and shall immediately change its limited liability company name and cease to use the ROSTA name and trademark upon ROSTA's ownership falling below 50% or upon the termination of this Agreement, whichever first occurs.

## Section V: General Rules

### 1. Trade Mark

Lovejoy is authorized and required to use the ROSTA trademark and logo in advertisements, brochures, catalogues, electronic media within the Territory for the following products:

-        For all products made either by ROSTA AG or under license by Lovejoy Inc.

Lovejoy is not allowed to use the ROSTA name and trademark for any other products not included in the list above.

The ROSTA trademark together with registration sign must be applied to all ROSTA products manufactured by Lovejoy under License of this agreement.

The trade mark ROSTA as well as the logo ⊜ are registered in the USA. In order to provide adequate protection of the trade mark sign and to follow regulations, Lovejoy has to use the ® - sign on all its advertisements and brochures when using the ROSTA-mark or label. Concerning the correct use and presentation of the ROSTA-name and trademark, Lovejoy has to consult the ROSTA marketing manual.

Upon termination of this Agreement for any reason, Lovejoy shall immediately cease and desist to utilize the ROSTA trademark and logo, except as otherwise provided for in this Section V.

### 2. Term of Agreement

This contract comes into effect on January 1st 2000.

Subject to the provisions of paragraph 3 of this Section V titled Termination and in addition to any other rights the parties either contained in this Agreement or at law to terminate this Agreement, either party shall have the right, without cause, to cancel this Agreement upon 12 months written notice in which case this Agreement shall terminate upon the expiry of the 12 months.

This contract supercedes and voids the previously signed Distribution and Cooperation Contract dated Dec., 22, 1988 and corresponding Addendums.

### 3. Termination

Notwithstanding any other provision of this Agreement, Lovejoy shall have the immediate right to terminate this Agreement in any one of the following instances:

a)        if ROSTA A.G. becomes insolvent, is declared bankrupt, makes an assignment or proposal for the benefit of creditors under any law pertaining to insolvency, bankruptcy and consequent reorganization;

b)        if any one of the other Sections of this Agreement is terminated; or, If ROSTA unilaterally ceases to perform under a section of the Agreement and continues to do so for 60 days after notice from Lovejoy.

Notwithstanding any other provision of this Agreement, ROSTA shall have the immediate right to terminate this Agreement in any one of the following instances:

a)      if the majority voting control of Lovejoy is transferred without prior written approval of ROSTA to continue this Agreement except if such transfer is to a) descendents of Mr. M.W. Hennessy or their spouses, b) M.W. Hennessy's spouse, or c) family trusts which meet the same conditions and qualifications as those contained in Section 18.2 of the Limited Liability Company Agreement entered into by and between ROSTA A.G. and Michael Hennessy Discretionary Trust, UAD 10/7/85;

b)      if Lovejoy becomes insolvent, is declared bankrupt, makes an assignment or proposal for the benefit of creditors under any law pertaining to insolvency, bankruptcy and consequent reorganization;

c)      if any one of the other Sections of this Agreement is terminated; or If Lovejoy unilaterally ceases to perform under a section of the Agreement and continues to do so for 60 days after notice from ROSTA.

Termination must occur within 90 days of the occurrence of any of the above events, otherwise the non-action by the party who has the right to terminate shall be construed as consent to the action.


4. **Confidential Information**

The parties herewith agree to keep all information deemed defined in writing as or marked confidential by the other party confidential from any third parties. ROSTA LLC shall not be considered a third party to this Agreement in regards of confidentiality but shall have the same obligations.

Confidential information includes but are is not limited to documents, or electronic files or verbal instructions containing information about the design, or manufacturing processes, application know-how, sales secrets and customer relations or any specific information marked confidential by one party. Verbal instructions must be deemed in writing as confidential in order to be subject to the provisions of Section V-4 and/or V-5. Written or printed information must be marked confidential in order to be subject to the provisions of Sections V-4 and/or V-5.
Any information exchanged between the parties prior to the effective date of this Agreement, which was not defined in writing as or marked confidential shall not be subject to the Section V-4 and V-5.

The following information shall not be considered confidential information for purposes of this Agreement:
(a)     Information that is available to the general public, or accessible by third parties on the date of this Agreement, or that becomes so available thereafter without a breach by a party hereunder.
(b)     Information that was already in the other party's possession as of the date of disclosure by the disclosing party.
(c)     Sales leads that could be obtained from information in the public domain.
(d)     Any information conveyed by a party to a customer or customers.

    (e)      Information that a party is obliged to produce pursuant to an order of a court of competent jurisdiction or a valid subpoena, provided that the party so obligated notifies the other party promptly and cooperates reasonably with the other party's efforts to contest or limit the scope of such order.

## 5.  Effects of  Termination

Notwithstanding termination all outstanding obligations as regards to outstanding payments, warranties, indemnifications and confidentiality survive and continue.

Outstanding orders can be filled if this can be accomplished within 4 months from the date of termination.  Lovejoy and ROSTA, LLC shall have the right to sell outstanding inventory under the ROSTA trademark for a maximum period of 4 months after termination upon the expiration of which ROSTA shall have the right at its option to purchase merchantable inventory at cost plus handling fee.

Immediately after the termination of the Agreement each party shall cease to use confidential information obtained from the other party. Neither party shall publish any confidential information obtained from the other party for ten years after the termination of this Agreement without any written approval from the other party.

## 6.  Modifications

Any changes or amendments to this contract have to be done in written form and have to be signed by both parties.

## 7.  Applicable Laws, Place of Jurisdiction, Arbitration

The applicable law shall be Swiss Law, Place of Jurisdiction for both parties shall be the commercial court in Aarau, Switzerland. In case of severe disagreement the parties agree to submit their case for binding arbitration at the International Chamber of Commerce in Paris.

## 8.  ROSTA's Indemnification of Lovejoy

In the event any third party product liability claims for defects in design or manufacture are ever asserted against Lovejoy for any end products it purchased from ROSTA AG or through ROSTA LLC, ROSTA AG agrees to indemnify, defend and hold Lovejoy harmless against any and all liabilities or losses, including expenses and attorneys' fees as well as any expenses related to product recalls. This indemnity shall not apply to any claim by Lovejoy for loss of profits and all other indirect and consequential damages are hereby excluded.

## 9.  LOVEJOY's Indemnification of ROSTA

In the event any third party product liability claims for defects in design or manufacture are ever asserted against ROSTA AG for any end products it purchased from LOVEJOY, LOVEJOY agrees to indemnify, defend and hold ROSTA harmless against any and all liabilities or losses, including expenses and attorneys' fees as well as any expenses related to product recalls. This indemnity shall not apply to any claim by ROSTA for loss of profits and all other

indirect and consequential damages are hereby excluded.

Downers Grove, IL USA

Date: ......*June 6, 2000*..............

Lovejoy, Inc.

..............................................

Hunzenschwil, Switzerland

Date: ......*june 6, 2000*..............

ROSTA AG

..............................................

**Read and accepted:**

Downers Grove, IL USA

Date: ......*June 6, 2000*..............

ROSTA LLC

..............................................

31.05.00