# EXHIBIT 5






# Distribution and License Contract

**between**

## ROSTA AG

**(located at Hauptstrasse 58, CH-5502 Hunzenschwil, Switzerland)**

**hereafter "ROSTA"**

**and**

## Lovejoy Inc.

**(located at 2655 Wisconsin Ave, Downers Grove, IL 60515, USA)**

**hereafter "Lovejoy"**

**Introduction**

The following contract replaces all previous contracts and agreements regarding the contract subjects made between Lovejoy and ROSTA. This contract addresses in 4 sections the following subjects:

- Distribution of ROSTA products in the territories of the USA I
- Manufacturing license from ROSTA to Lovejoy II
- Supply of semi-products used for the manufacturing of ROSTA products III
- General rules IV

ROSTA



## SECTION I Distribution of ROSTA products in the territory of the USA

### 1. Definitions

1.1 "Licensed Products" shall mean ROSTA rubber suspension units, ROSTA tensioners and accessories, ROSTA oscillating mountings, ROSTA anti-vibration mountings, ROSTA motorbases and ROSTA custom made elements.

* 1.2 "ROSTA" shall mean Messrs. ROSTA AG, CH-Hunzenschwil, and their Affiliates.

1.3 "Lovejoy" shall mean Messrs. Lovejoy Inc., Downers Grove, IL 60515, USA, and their Affiliates in the Territory.

1.4 "Affiliate" shall mean:

i an organisation of which fifty percent (50 %) or more of the voting stock is controlled or owned, directly or indirectly, by either party to this Agreement; or

ii an organisation which directly or indirectly owns or controls fifty percent (50 %) or more of the voting stock of either party to this Agreement; or

iii an organisation, the majority ownership of which is directly or indirectly common to the majority ownership of either party to this Agreement.

Either ROSTA or Lovejoy may extend to any Affiliate the benefits of this Agreement but ROSTA and Lovejoy each will remain responsible to the other party hereto for all the obligations placed upon it by this Agreement.

1.5 "Third Parties" shall mean each party except of ROSTA, Lovejoy and their Affiliates.

1.6 "Distribution" shall mean the canvassing of the trade and the organisation of the market penetration to the end-user in the Territory.

1.7 "Territory" shall mean United States of America.

### 2. Grant of License

2.1 ROSTA hereby grants to Lovejoy the exclusive right and license in the Territory to distribute the Licensed Products in the Territory.

2.2 In principle, ROSTA will not directly supply Third Parties in the Territory with Licensed Products.

ROSTA



2.3 For market strategic reasons ROSTA reserves the right to directly supply the Licensed Products in the Territory. ROSTA will indicate such customers to Lovejoy and i.g. a commission based on the sales volume will be agreed to be paid from ROSTA to Lovejoy.

**3. Appointment**

Lovejoy hereby agrees to promote distribution of Licensed Products in its own name and at its own expense as ROSTA products. Therefore, he has to indicate on all its forms, such as order acknowledgements, delivery notes and invoices, the name ROSTA; e.g. 25 pcs. ROSTA-tensioner devices type SE 15 = (currency and amount).

**4. Ownership of Licensed Product**

ROSTA retains title and ownership of all know-how for the Licensed Products and of information and material made available to Lovejoy. The Licensed Products and the accompanying written material are subject to copyright, with exception as mentioned in section II of this agreement.

**5. Minimum Quantity**

5.1 ROSTA shall deliver and Lovejoy shall purchase a minimum annual sales volume (in CHF) of Licensed Products as specified in the annual sales budget. If strategic reasons require it Lovejoy and ROSTA may agree on minimum quantities for certain products.

5.2 For future years, Lovejoy and ROSTA will agree on the minimum annual sales volume during the budget process normally taking place in September / October for the following calendar year. The agreement shall be firm and binding for both parties.

5.3 Subject to the provisions in Article 2 hereof, Lovejoy will be granted an exclusive right and license to distribute the Licensed Products in the Territory. If the minimum annual sales volume according to Articles 5.1 and 5.2 hereof are not reached and Lovejoy fails to provide justifiable evidence for the shortfall (like economic down turn, loss of key customers) and/or fails to demonstrate his corrective actions and/or fails to execute corrective actions as recommended by ROSTA, the exclusive right can be changed to a non-exclusive right within a three months written notice from ROSTA.

ROSTA



**6. Best Efforts**

6.1 Lovejoy will take the following measures for promotion of sales:
- to engage in promotional activities;
- to maintain a sales network;
- to provide customer and guarantee services;
- to employ staff with specialised training, (basic training sessions at ROSTA AG).

6.2 ROSTA will provide Lovejoy with an adequate amount of disposable technical brochures required for the distribution of the Licensed Products.

6.3 Lovejoy will not sell the Licensed Product from any branch outside the Territory nor establish any branch or maintain any distribution depot outside the Territory with the purpose to sell the Licensed Products.

**7. Internet Promotion**

7.1 The parties may promote and sell the Licensed Products via Internet. Lovejoy will co-ordinate the Internet appearance with ROSTA to guarantee the corporate identity.

7.2 The provisions in Section IV / Article 1 hereof shall be applicable to the Internet promotion of the parties accordingly.

**8. Assistance**

8.1 ROSTA will provide Lovejoy with the know-how of Licensed Products, including counselling Lovejoy on the installation, action and forms of application of the Licensed Products, to assist Lovejoy in the use of Licensed Products.

8.2 ROSTA and Lovejoy shall keep each other fully advised of improvements directly concerning the Licensed Products during the term of this Agreement. Each party shall inform, document and make available to each other all alterations and improvements to the Licensed Products.

**9. Prices**

9.1 Prices for Licensed Products granted to Lovejoy are based on the valid price list.

9.2 Lovejoy shall determine solely the resale prices of Licensed Products.

9.3 ROSTA will provide Lovejoy with a non-binding price recommendation on request.

ROSTA



**10. Terms of Delivery**

10.1 Lovejoy will order Licensed Products with a binding order according to the prices valid by placing order.

10.2 Prices granted to Lovejoy are defined as delivered at Swiss frontier, in Swiss Francs, including packing.

10.3 Duties and value-added tax have to be paid by Lovejoy.

**11. Terms of Payments**

11.1 Payments for Licensed Products shall be made within 60 days after receipt of the respective invoice by Lovejoy. Invoices are sent to Lovejoy by delivering Licensed Products by ROSTA. Other terms of payment have to be fixed by a writing duly executed by the parties.

11.2 ROSTA is entitled to ask, without any further action, for an interest-payment of 10 % p.a. on delayed amounts.

11.3 Legal domicile for payments of this Agreement is CH-Hunzenschwil.

11.4 Payment by compensation is not allowed.

**12. Commission**

In the cases mentioned in Article 2.3 hereof ROSTA may pay a commission to Lovejoy. Such commission shall be agreed to on a case by case basis and subject to Lovejoy's contribution to obtain the order in each individual case.

**13. Warranty and Disclaimer**

13.1 ROSTA hereby warrants to Lovejoy that the Licensed Products delivered under this Agreement will be free from defects in material and workmanship.

13.2 In case Licensed Products are defective, Lovejoy may request for compensation delivery of Licensed Products or elimination of defect by ROSTA during the warranty period of two years.

13.3 If a defect according to Article 14.2 is not eliminated or compensated by ROSTA within a reasonable period, Lovejoy may ask for a price reduction or annulment of Agreement.

ROSTA



13.4 The above is the only warranty of any kind, either express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose that is made by ROSTA on these Licensed Products. No oral or written information or advice given by ROSTA shall create a warranty or in any way increase the scope of this warranty and Lovejoy may not rely on any such information or advice. Lovejoy may have other rights which vary from state to state.

13.5 Neither ROSTA nor anyone else who has been involved in the creation, production or delivery of Licensed Products shall be liable for any direct, indirect, consequential or incidental damages (including damages for loss of business profits, business interruption, loss of business information and the like) arising out of the use of or inability to use such Licensed Products, subject to the compelling product liability law.

**14. Liability Insurance**

ROSTA agrees to provide a product liability insurance and to prove the existence thereof.




## SECTION II Manufacturing License of ROSTA Products

### 1. Definitions

| | | |
|---|---|---|
| 1.1 | Licensed Products | ROSTA products manufactured by Lovejoy using approved raw materials and/or ROSTA products and corresponding manufacturing methods |
| 1.2 | Raw Materials | Materials approved by ROSTA used to produce Liscensed Products |
| 1.3 | Royalty | amount of money paid by Lovejoy per manufactured ROSTA tensioner |

### 2. Licensed Products

The Licensed Products include the following:

- ROSTA standard tensioners size PT7, PT11, SE 11, SE 15, SE 18, SE 27
- Flexco scraper devices FR 18 x 50
- Supports, motor plates and pre-tensioning devices used in motorbases MB 27, 50 and 70 (no royalty payment)

Licensed products shall be produced by Lovejoy using approved Raw Materials as defined in Art. 3. The quality and technical execution of Licensed Products shall be equivalent to the ROSTA standards. Lovejoy is responsible for a regular scheduled quality control of their Licensed Products. This will be verified by regular testing of Licensed Products at ROSTA AG.

The ROSTA name has to be clearly legible on all Licensed Products (see Section IV, Art. 1).

Upon permission of ROSTA, Lovejoy can expand their Licensed range to other ROSTA products.

### 3. Raw Materials

For the production of Licensed Products Lovejoy must use the following Raw Materials:

ROSTA



For tensioners:

- rubber parts supplied by ROSTA AG in appropriate dimensions (diameter and cut to length) and quality
- tensioner arms supplied by ROSTA AG in appropriate dimensions and quality
- housings (produced by Lovejoy) in the same quality as ROSTA is specifying and purchasing them from Lovejoy

For motorbases:

- complete DR-elements supplied directly by ROSTA AG in corresponding length
- metal parts from third parties in corresponding quality to the ROSTA original parts (kit II to V)?

The supply of Raw Materials is defined in Section III of this contract.

**Royalty**

For each tensioner manufactured by Lovejoy a royalty has to be paid. The amount depends on the unit size and is specified in Appendix II. The amount is based on the Swiss cost index, and shall be adjusted every January 31st for that year. It will only be adjusted if the accumulated difference will be more than 5 index points over or under the last change.
The royalty is due quarterly. Lovejoy will calculate the amount themselves and inform ROSTA on the number of elements sold.

**5. Sales of Licensed Products**

Lovejoy is allowed to sell licensed products within the Territory as defined in Section I-1.

**6. Termination of Manufacturing License**

ROSTA has the right to immediately terminate this license agreement if Lovejoy fails to cure the following defaults within 60 days after receiving a written notice from ROSTA:

- Lovejoy is using unapproved material
- Lovejoy is modifying the products without prior written approval
- Lovejoy fails to affix the ROSTA name to Licensed Products
- Lovejoy fails to pay royalties when due

ROSTA



7. **Warranty of Licensed Products**

Lovejoy shall not issue to customers any warranty in the name of or binding ROSTA in connection with all products produced and sold under this License.





## SECTION III Supply of Raw Materials

### 1. Definitions

This Section III governs the terms of transfer of raw materials between the Parties. For the purpose of this Section III, the term Raw Materials shall mean any or all the following:

| | |
|---|---|
| **Housings** | Housings for SE 11 to SE 27, PT 7 and PT 11 produced by Lovejoy in sintered metal or glass reinforced nylon |
| **Rubber Inserts** | Pieces of RUBMIX 10 in diameters used for the manufacturing of SE 11 to SE 27, cut to length by ROSTA |
| **Tensioner Arms** | Welded construction consisting of inner square and lever arm produced by ROSTA used for the manufacturing of SE 11 to SE 27 |

### 2. Agreement

ROSTA agrees to produce and sell at lowest possible price **Rubber Inserts** and **Tensioner Arms** to Lovejoy. Lovejoy agrees to produce and sell at lowest possible price Housings to ROSTA.

Lowest possible price shall mean direct material and labor cost including manufacturing overhead, but without overhead for sales and management. Price/quality relation shall in any case be competitive with industry standards.

The selling party shall inform the buying party about the optimum lot size in order to minimize cost. The buying party shall inform the selling party latest by October 31st about the estimated demand for the coming year and the proposed buying schedule (frame contract). Any deviations from the frame contract are to be reported to the other party as soon as that fact becomes known. Any price modification has to be announced with at least three months advance notice.

The selling party warrants the quality of its Raw Materials sold to the other party (see clause 4 below).

### 3. Terms of Delivery and Payment

For **Raw Materials** supplied by ROSTA AG:

| | |
|---|---|
| Delivery: | free Swiss border, exclusively any duties and taxes |
| Payments: | in CHF, 60 days net from date of invoicing |

ROSTA



For **Raw Materials** supplied by Lovejoy:

Delivery: free US border, exclusively any duties and taxes, seaworthy packing not included.

Payments: in US$, 60 days net from date of invoicing

Lovejoy and ROSTA AG agree to annually review each company's respective currency exposure based on the coming year's estimated purchase volume from the other company. If the companies agree, a "currency exchange rate clause" can be added to the Agreement.

**4. Warranty**

ROSTA's warranty for Raw Materials is limited to the design and manufacture of these materials supplied to Lovejoy. Lovejoy's warranty for Raw Materials is limited to the manufacture of these materials supplied to ROSTA. Each party is respectively responsible for the warranty of the end (final) product each manufactures and sells to their respective customers save and except to the extent that a claim derives directly from a raw material supplied by the other party, in which case and to that limit the other party shall indemnify the party which sold the final product. In no circumstance will either party be liable to the other for indirect or consequential damages, including, without limitation, loss of profits. This warranty shall cover quality of materials and workmanship and shall be the sole warranty provided by the parties respectively as aforesaid, all other warranties implied by law, including without limitation, merchantability and fitness for purpose, being hereby excluded.

ROSTA



## SECTION IV General Rules

### 1. Trademark

Lovejoy is authorized and required to use the ROSTA trademark and logo in advertisements, brochures, catalogues, electronic media within the Territory for the following products:

- For all products made either by ROSTA AG or under license by Lovejoy Inc.

Lovejoy is not allowed to use the ROSTA name and trademark for any other products not included in the list above.

The ROSTA trademark together with registration sign must be applied to all ROSTA products manufactured by Lovejoy under License of this agreement.

The trademark ROSTA as well as the logo are registered in the USA. In order to provide adequate protection of the trademark sign and to follow regulations, Lovejoy has to use the ®–sing on all its advertisements and brochures when using the ROSTA-mark or label. Concerning the correct use and presentation of the ROSTA-name and trademark, Lovejoy has to consult the ROSTA marketing manual.

Upon termination of this agreement for any reason, Lovejoy shall immediately cease and desist to utilize the ROSTA trademark and logo, except as otherwise provided for in this Section IV.

### 2. Term of Agreement

This contract comes into effect on July 1, 2005.

Subject to the provisions of paragraph 8 of this Section IV titled Termination and in addition to any other rights the parties either contained in this agreement or at low to terminate this agreement, either party shall have the right, without cause, to cancel this agreement upon 12 months written notice in which case this agreement shall terminate upon the expiry of the 12 months.

ROSTA



**3. Confidentiality**

3.1 Lovejoy will use the Licensed Product exclusively for the purpose described in this Agreement. Lovejoy shall maintain the confidentiality of all confidential or property information of ROSTA during the term of this Agreement and after the Agreement has expired. All information disclosed by ROSTA to Lovejoy or obtained, acquired or developed by Lovejoy in connection with Lovejoy's performance of this Agreement shall be deemed confidential or proprietary information of ROSTA.

3.2 Lovejoy will use his best efforts to ensure that the information it has received is kept confidential, including requiring confidentiality from workers and subcontractors, and will not be communicated to unauthorised Third Parties.

**4. Infringements**

4.1 Lovejoy shall notify ROSTA immediately upon receipt by Lovejoy of any claim in connection with Licensed Products. Lovejoy shall co-operate fully with ROSTA in defence of any such action.

4.2 ROSTA shall avenge all offences against competition in the Territory and take actions against such offences.

**5. ROSTA's Indemnification of Lovejoy**

ROSTA agrees to name Lovejoy as an additional insured on it's product liability insurance policy, which shall have a minimum limit of US$ 10 million per occurrence, US$ 10 million product aggregate, and US$ 10 million general aggregate. The coverage is to include product and completed operations on a primary basis.
ROSTA will furnish Lovejoy a certificate from their insurance carrier per the above. Attached to the certificate will be a copy of the endorsement per the above requirements.

**6. Lovejoy's Indemnification of ROSTA**

Lovejoy agrees to name ROSTA as an additional insured on it's product liability insurance policy, which shall have a minimum limit of US$ 10 million per occurrence, US$ 10 million product aggregate, and US$ 10 million general aggregate. The coverage is to include product and completed operations on a primary basis.
Lovejoy will furnish ROSTA a certificate from their insurance carrier per the above. Attached to the certificate will be a copy of the endorsement per the above requirements.

ROSTA



**7. Duration**

7.1 This Agreement will become effective by execution thereof. Unless terminated sooner under Article 7.2 or by mutual agreement, the agreement will remain in effect for one year. The Agreement will automatically be prolonged for another year unless terminated by one of the parties respecting a twelve (12) months' written notice by end of each month.

7.2 Notwithstanding any other provision of this Agreement, Lovejoy shall have the immediate right to terminate this Agreement in any one of the following instances:

a) if ROSTA AG, becomes insolvent, is declared bankrupt, makes an assignment or proposal for the benefit of creditors under any law pertaining to insolvency, bankruptcy and consequent reorganization;

b) if any one of the other Sections of this Agreement is terminated; or, if ROSTA unilaterally ceases to perform under a section of the Agreement and continues to do so for 60 days after notice from Lovejoy.

Notwithstanding any other provision of this Agreement, ROSTA shall have the immediate right to terminate this Agreement in any one of the following instances:

a) if the majority voting control of Lovejoy is transferred without prior written approval of ROSTA to continue this Agreement except if such transfer is to a) descendents of Mr. M.W. Hennessy or their spouses b) M.W. Hennessy's spouse, or c) family trusts which meet the same conditions and qualifications as those contained in Section 18.2 of the limited liability company agreement entered into by and between ROSTA AG and Michael Hennessy discretionary Trust, UAD 10/7/85;

b) if Lovejoy becomes insolvent, is declared bankrupt, makes an assignment or proposal for the benefit of creditors under any law pertaining to insolvency, bankruptcy and consequent reorganization;

c) if any one of the other sections of this Agreement is terminated; or if Lovejoy unilaterally ceases to perform under a section of the Agreement and continues to do so for 60 days after notice from ROSTA.

Termination must occur within 90 days of the occurrence of any of the above events, otherwise the non-action by the party who has the right to terminate shall be construed as consent to the action.

ROSTA



**8. Termination of Agreement**

8.1 Upon termination of this Agreement, Lovejoy shall deliver to ROSTA a list of outstanding negotiations which will be terminated by ROSTA under the terms of this Agreement.

Orders placed with Lovejoy within twelve (12) months after termination of this Agreement, but an offer has been evidently made by Lovejoy before termination thereof, shall be terminated under the terms of this Agreement.

8.2 Upon termination of the Agreement Lovejoy shall provide ROSTA with a list of all agreements with customers existing in writing. ROSTA will enter into the customer agreements of Lovejoy, but reserves the right to stipulate new conditions.

8.3 Upon termination of this Agreement, Lovejoy shall return all received written material as files, notes, documents etc. concerning the know-how of ROSTA. This obligation includes written material provided by ROSTA as well as material developed by Lovejoy.

8.4 Upon termination of the Agreement by ROSTA, Lovejoy may receive a compensation payment provided that it has acquired new customers for the Licensed Products or has essentially increased the turnover with existing customers and the payment is justified by considering all circumstances.

8.5 Notwithstanding termination all outstanding obligations as regards to outstanding payments, warranties, indemnifications and confidentiality survive and continue with Lovejoy.

8.6 Remaining stock of merchantable products will be repurchased from ROSTA. Purchase price shall depend on the condition and age of the products sold back to ROSTA. Purchase price shall include a compensation for the transportation and import cost of Lovejoy.

**9. Force Majeure**

In the case of "force majeure" especially in the case of shortage of raw materials and/or energy, war, fire, damages or disturbances in the plants, official measures, interruptions in the way of transportation, labour troubles etc. the involved party shall be exonerated from its obligation under this Agreement without being subjected to damage claims from the other party.

ROSTA 

**10. Governing Law**

The present Agreement shall be governed in all respects by Swiss law.

**11. Jurisdiction**

Any disputes arising under this Agreement will be settled by the court of Hunzenschwil, Switzerland.

**12. Miscellaneous**

12.1 This Agreement and its Appendices shall not be amended except by a writing duly executed by ROSTA and Lovejoy.

12.2 This Agreement replaces all former agreements between the contracting parties.





**13. Appendices**

The following appendices shall be integrated part to the present Agreement:

| Appendix I | Section II / 4 | Royalties |
|---|---|---|

US-Downers Grove, JAN 22, 2006 CH-Hunzenschwil, Dec 15, 2005

LOVEJOY INC. ROSTA AG