UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSTA AG,

        Plaintiff,

v.

LOVEJOY, INC.,

        Defendant.
                                  /

Case No. 1:16-cv-199

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This matter is now before the Court on defendant Lovejoy, Inc.'s motion to dismiss plaintiff Rosta AG's complaint (docket no. 9).

**I.    Background**

Plaintiff (sometimes referred to as "Rosta") is a Swiss corporation with its principal place of business in Hunzenschwill, Canton of Aargau, Switzerland, with a place of business located in South Haven, Michigan. Compl. (docket no. 1, PageID.1-2). Rosta manufactures rubber suspension systems for the machine and automotive industries. *Id*. at PageID.3. Its business entities are located throughout the world, including in Canada, Germany, Italy, China, Australia, and the United States, with its principal U.S. entity, "Rosta USA Corp.," located in South Haven, Michigan. *Id*.

Defendant Lovejoy, Inc. ("Lovejoy"), an Illinois corporation with a place of business located in South Haven, Michigan, is a former licensed manufacturer and distributor of a limited number of Rosta's products. *Id*. at PageID.1-2. Rosta brought this action for trademark infringement, trade dress infringement, and unfair competition against Lovejoy, alleging that

Lovejoy's continued use of its trademarks and creative materials that have caused confusion and served as a market displacement for Rosta's goods. *Id*. at PageID.1.

Rosta's claims are based upon the following allegations. Since 1988, Rosta has consistently and exclusively used the marks "SE" and "AB" in the United States "in association with the sale and offering for sale of elastometric tensioners and oscillating mounts." *Id*. at PageID.4. These two marks are inherently distinctive or have otherwise acquired secondary meaning through Rosta's longstanding use of SE and AB within the United States. *Id*. In November 2014, Rosta applied for registration of the SE and AB marks with the United States Patent and Trademark Office on the basis of its Swiss registration for the same marks, which achieved registration in Switzerland on September 8, 2014. *Id*. Specifically,

(1) Rosta's application for registration of the SE mark in the United States was granted on June 30, 2015 under Reg. No. 4,762,605 and was provided with a priority date of May 19, 2014.

(2) Rosta's application for registration of the AB mark in the in the United States was granted on June 30, 2015 under Reg. No. 4,762,596 and was provided with a priority date of May 19, 2014.

*Id*. at PageID.5. The SE Registration is attached to the complaint as Exhibit 1 (PageID.20) and the AB Registration is attached to the complaint as Exhibit 2 (PageID.22).

Since as early as 1988, Rosta has used the non-functional color blue to indicate the origin of its tensioner and oscillating goods in the United States. *Id*. at PageID.5. In the minds of the consuming public, Rosta's continuous and exclusive use of the color blue identifies the source of its tensioner and oscillating products and not the product itself. *Id*. As a result of Rosta's exclusive use of the non-functional color blue on its tensioner and oscillating goods, it has acquired trade dress rights in and to the color blue. *Id*.

In 1988, 2000 and 2006, Rosta and Lovejoy executed a series of agreements under which Lovejoy was granted a license to distribute and manufacture certain Rosta products in the United States as "Rosta Products" under agreements that reserved all ownership rights with Rosta. *Id*. at PageID.5.  The three agreements from 1988, 2000 and 2006 govern the sale and manufacture of Rosta's products, including those bearing the SE and AB marks. *Id*. at PageID.7. Rosta alleged that it is the exclusive owner of the SE and AB marks, and that Lovejoy is not entitled to any ownership in these marks as a result of those three agreements. *Id*.

The final agreement, executed on January 22, 2006, is critical to Rosta's claims in this action. Rosta set forth the relevant terms as follows:

29. Under the terms of the 2006 Agreement, Defendant Lovejoy was provided with a license to distribute Plaintiff Rosta's products within the United States in Plaintiff Rosta's name.

30. Specifically, the 2006 Agreement stated that Defendant Lovejoy was to denote Plaintiff Rosta and its respective trademarks as the origin of the products that Defendant Lovejoy was selling on Plaintiff Rosta's behalf.

31. The 2006 Agreement also stated "Rosta retains title and ownership of all know-how for the Licensed Products and of information and material made available to Lovejoy." See Exhibit 5, 2006 Agreement.

32. The 2006 Agreement also required Defendant Lovejoy to respect Plaintiff Rosta's trademark rights.

33. And the 2006 Agreement provided Plaintiff Rosta with the ability monitor and control the quality of the products under the Agreement and required Defendant Lovejoy to monitor the marketplace and notify Plaintiff Rosta of any infringement of the products licensed under the Agreement.

*Id*. at PageID.8.

The 2006 Agreement was terminated on or about August 31, 2014. *Id*. The alleged wrongful conduct giving rise to Rosta's claims are set forth in ¶¶ 35 through 38:

35. Subsequent to the termination of the Agreement, Defendant Lovejoy sold elastometric tensioners and oscillating mounts under Plaintiff Rosta's distinctive SE and AB marks, including, but not limited to, through its own catalog and website and third party distributors such Applied Industrial Technologies, Inc., Motion Industries, Inc., and Amazon.com. *See* Exhibit 6, Lovejoy Use of SE and AB; Exhibit 7, Distributor Screenshots.

36. Plaintiff Rosta advised Defendant Lovejoy that its actions constituted trademark infringement on two separate occasions: October 7, 2015 and December 3, 2015.

37. Defendant Lovejoy ignored Plaintiff Rosta's warnings and continues to sell elastometric tensioners and oscillating mounts under Plaintiff Rosta's distinctive SE and AB marks, including, but not limited to, through its own catalog and website and third party distributors such Applied Industrial Technologies, Inc., Motion Industries, Inc., and Amazon.com. See Exhibit 6, Lovejoy Use of SE and AB; Exhibit 7, Distributor Screenshots.

38. Defendant Lovejoy continues to sell elastometric tensioners and oscillating mounts that have been painted in Plaintiff Rosta's distinctive blue trade dress. See Exhibit 6, Lovejoy Use of SE and AB.

*Id*. at PageID.8-9.

Rosta has set forth five causes of action related to Lovejoy's sales of the blue SE and AB products: Count I (trademark infringement); Count II (contributory trademark infringement); Count III (false designation of origin); Count IV (trade dress infringement); and, Count V (Michigan common law unfair competition). Among other relief, Rosta seeks to enjoin Lovejoy from using Rosta's SE and AB marks and trade dress, statutory damages in the amount of $2,000,000.00, treble

damages, actual damages, Lovejoy's profits, costs, expenses, attorney fees, pre- and post-judgment interest, and such other relief to which it may be entitled. *Id*. at PageID.9-17.

## II. Lovejoy's motion to dismiss

Lovejoy brings its motion pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. Discussion

### A. Trademark infringement (Count I)

Lovejoy contends that Rosta cannot maintain a cause of action for trademark infringement because it has failed to allege facts showing trademark use of "SE" and "AB". "To

state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Manufacturing v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009), citing 15 U.S.C. § 1114(1). *See Kassa v. Detroit Metro Convention & Visitors Bureau*, No. 16-1007, 2017 WL 117534 at *1 (6th Cir. Jan. 12, 2017) (observing that "[t]he third element is the 'touchstone of liability'").

"The Lanham Act defines a trademark as 'any word, name, symbol, or device, or any combination thereof' which is used or intended to be used by a person 'in commerce . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' 15 U.S.C. § 1127." *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir. 2005). The Sixth Circuit uses a two-step test to determine whether trademark infringement has occurred. *Kibler v. Hall*, 843 F.3d 1068, 1073 (6th Cir. 2016). "First, we determine whether plaintiff's mark is protectable. Then, we assess whether relevant consumers are likely to confuse the sources of the parties' products." *Id*. (internal citations omitted).

With respect to the first step, Lovejoy contends that the marks are not protectable, i.e., that the terms "SE" and "AB" are a "type" or "size" of products, and that "[d]esignations of grade, size or type have repeatedly been held not to constitute trademark use." Lovejoy Brief at PageID.93. Only marks that are "distinctive" as a matter of law are accorded trademark protection. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512 (6th Cir. 2007). Marks described as "arbitrary," "fanciful," or "suggestive" are "inherently distinctive" and protectable. *Id*. at 512. On the other hand, a so-called "generic" mark may never qualify for trademark protection. *Id*. at 513.

6

"Between these two poles lie 'descriptive' marks. Marks that are descriptive are not inherently distinctive but may enjoy the benefit of protection if they develop a 'secondary meaning.'" *Id*. "A descriptive mark achieves secondary meaning when 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product.'" *Id.*, quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11 (1982).

As discussed, Rosta has alleged that since 1988, it has consistently and exclusively used the marks "SE" and "AB" in the United States in association with the sale and offering for sale of elastometric tensioners and oscillating mounts. Based on the longstanding use of SE and AB in the United States, Rosta has alleged that these two marks are inherently distinctive or have otherwise acquired secondary meaning. In addition, Rosta has registered these marks. Construing the complaint in the light most favorable to the plaintiff (Rosta), the Court concludes that Rosta has alleged that SE and AB are protectable marks.

With respect to the second step, Lovejoy contends that customer confusion will not result. As an example, Lovejoy has produced a photo of a Lovejoy part. Lovejoy Brief at PageID.94. Lovejoy points out that its use of the stylized phrase "RunRight by Lovejoy" is in contrast to the non-stylized marking of "SE 11". *Id*. at PageID.94-95. As discussed, Rosta has alleged that its marks of SE and AB are distinctive marks with a secondary meaning. Construing the complaint in the light most favorable to the plaintiff (Rosta), the Court concludes that Lovejoy's use of SE or AB on a product could cause confusion regarding the source of the products. Accordingly, Rosta's complaint contains sufficient factual matter to state a claim to relief for trademark

infringement that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Accordingly, Lovejoy's motion to dismiss Count I should be denied.

### B. False designation of origin (Count III) and Michigan common law unfair competition (Count V)

Lovejoy contends that Rosta's claims for false designation of origin (Count III) and Michigan common law unfair competition (Count IV) should be dismissed with prejudice for the same reasons as Rosta's trademark infringement claim (Count I), because the elements in all three counts are the same. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.") and *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1033 (E.D. Mich. 1998) (elements for a Michigan unfair competition claim are the same as the elements for a Lanham Act claim for false designation of origin and require a finding of a likelihood of confusion). As discussed in § III.A., Rosta's complaint has alleged a cause of action for trademark infringement. Accordingly, Lovejoy's motion to dismiss Counts III and V should be denied.

### C. Contributory trademark infringement (Count II)

The form of secondary liability known as contributory trademark infringement was first recognized by the Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982). *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013). In *Inwood Laboratories*,

> The Court determined that liability under the Lanham Act may be imposed on those who facilitate trademark infringement, stating that where a "distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, [it] is contributorially responsible for any harm done as a result of the deceit." *Id*. at 854, 102 S.Ct. 2182. Although the Lanham Act refers only to direct trademark infringers, *Inwood* established that liability may also be imposed on those who facilitate the infringement.

*Id*. A cause of action for contributory infringement allows a trademark holder to hold a third-party liable for the infringing acts of others. *See, e.g., Goodfellow*, 717 F.3d at 503 ("[t]he teaching of *Inwood* has been applied to flea market operators, rendering them subject to liability for trademark infringement by vendors"). The Sixth Circuit has recognized that other circuits have also applied this reasoning to internet marketplaces, "concluding that the marketplace may be liable for contributory trademark infringement if it knew or had reason to know identified vendors were engaging in infringing activity." *Id*. In this regard, "the case law suggests that a contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant. *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007).

Here, Rosta has alleged that Lovejoy both infringed its trademark and contributed to the infringement of its trademark by third-parties. Unlike the plaintiff in *Goodfellow*, who sued a third-party flea market operator for being contributorily liable for its vendors' trademark infringement, Rosta does not sue the third-party operators (Applied Industrial Technologies, Inc., Motion Industries, Inc., and Amazon.com.) for contributory trademark infringement. Rather, Rosta alleged that these third-parties engaged in direct trademark infringement by selling Lovejoy's

products on-line, and seeks to hold Lovejoy responsible for alleged contributory infringement because Lovejoy facilitated the trademark infringement.

In this instance, the Court concludes that Rosta has not alleged a cause of action against Lovejoy for contributory trademark infringement. As discussed, contributory trademark infringement is a form of secondary liability directed at a third-party who acts as a facilitator for the trademark infringement. For Rosta to state this cause of action against Lovejoy, it needs to allege that the online distributors were the parties who engaged in the trademark infringement and that Lovejoy was the third-party who facilitated it. However, under the facts as alleged, Rosta cannot state a cause of action for trademark infringement against the on-line distributors Applied Industrial Technologies, Inc., Motion Industries, Inc., and Amazon.com. In *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979-80 (N.D. Cal. 2015), where the plaintiff alleged that on-line distributors (in that case defendants Amazon.com, Inc. and Google, Inc.) each offered an app in their online store whose title infringed the registered "Free Kick Master" mark, the court concluded that "[t]here is no allegation . . . that the defendants themselves used the "Free Kick Master" mark in commerce," and that "the trademark infringement claims can only be interpreted as claims of contributory infringement." Similarly, the distributors in this case, Applied Industrial Technologies, Inc., Motion Industries, Inc., and Amazon.com., did not use the SE or AB marks in commerce. As discussed in § III.A., it was Lovejoy who engaged in the direct infringement by using the SE and AB marks in commerce. For this reason, Rosta's claims against the distributors "can only be interpreted as claims of contributory infringement." Rosta cannot state a cause of action against Lovejoy for secondary liability under a theory of contributory infringement in the absence of a claim of direct infringement by someone else. For these reasons, Rosta's complaint fails to state a claim against

Lovejoy for engaging in contributory trademark infringement. Accordingly, Lovejoy's motion to dismiss Count II should be dismissed.

### D.     Trade Dress infringement (Count IV)

Trademark and trade dress infringement are "separate and distinct causes of action under the Lanham Act." *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006). "[T]rade dress is not explicitly defined in the Lanham Act, but has been described by the Supreme Court as the 'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer or source.'" *Gibson Guitar*, 423 F.3d at 547 (6th Cir. 2005), quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). "Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and . . . promotes its sale." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (internal quotation marks and brackets omitted). "Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id*. at 629 (internal quotation marks omitted).

The Lanham Act, 15 U.S.C. § 1125(a), protects from infringement the unregistered "trade dress" of a product. *Abercrombie*, 280 F.3d at 629. To recover for trade dress infringement, "a party must prove by a preponderance of the evidence: 1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Id*.

Case 1:16-cv-00199-PLM-RSK   ECF No. 20,   PageID.167   Filed 03/29/17   Page 12 of 15

The gist of Rosta's claim is that its use of the color blue identifies the source of its elastometric tensioners and oscillating mounts.

> The question of whether a color can be protected as a trademark or trade dress was finally resolved in 1995 by the Supreme Court's decision in *Qualitex* [*Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995)], which involved a claim for trade dress protection of the green-gold color of a dry cleaning press pad. The question presented was "whether the [Lanham Act] permits the registration of a trademark that consists, purely and simply, of a color." *Qualitex*, 514 U.S. at 160–61, 115 S.Ct. 1300 (citation omitted). Reversing a decision of the Ninth Circuit that had declared color per se ineligible for trademark protection, the Court observed that "it is difficult to find, in basic trademark objectives, a reason to disqualify absolutely the use of a color as a mark." *Id*. at 164, 115 S.Ct. 1300. The Court held, among other things, that it could find no "principled objection to the use of color as a mark in the important 'functionality' doctrine of trademark law." *Id*. It concluded that "color alone, at least sometimes, can meet the basic legal requirements for use as a trademark. It can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function." *Id*. at 166, 115 S.Ct. 1300 (emphasis added).

*Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*, 696 F.3d 206, 218 (2d Cir. 2012).

Here, Rosta has alleged that since as early as 1988, it has used the non-functional color blue to indicate the origin of its tensioner and oscillating goods in the United States, and that in the minds of the consuming public, Rosta's continuous and exclusive use of the color blue identifies the source of its tensioner and oscillating products and not the product itself. In support of its complaint, Rosta has included a picture of Lovejoy's blue SE 11. *See* Exhibit (docket no. 1-6, PageID.62). Based on the allegations, the Court concludes that Rosta's complaint contains sufficient factual matter to state a claim to relief that is plausible on its face. Accordingly, Lovejoy's motion to dismiss Count IV should be denied.

12

### E. Counterfeiting statutory damages

In its motion, Lovejoy states that although Rosta does not assert a claim of counterfeiting, Rosta asserts that it is entitled to treble damages or statutory damages of up to $2,000,000 for its claims of trademark infringement and contributory trademark infringement under 15 U.S.C. § 1117. Compl. at PageID.17. Lovejoy further states that statutory damages under this provision are only available in cases involving the use a counterfeit mark, and statutory damages of up to $2,000,000 are only available for cases involving "willful" use of a counterfeit mark, citing 15 U.S.C. § 1117(c). Lovejoy contends that because Rosta does not claim counterfeiting, it is not, as a matter of law, entitled to statutory damages. In this regard, Lovejoy states that Rosta has not alleged that Lovejoy intentionally counterfeited SE and AB. For this reason, Lovejoy seeks to have Rosta's allegations regarding statutory damages stricken.

The available remedies under 15 U.S.C. § 1117(b) include treble damages for use of counterfeit mark as defined in 15 U.S.C. § 1116(d), while 15 U.S.C. § 1117(c)(2) provides that "if the court finds that the use of the counterfeit mark [as defined in 15 U.S.C. § 1116(d)] was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."

The remedies for use of a counterfeit mark set forth in 15 U.S.C. § 1117 refer to 15 U.S.C. § 1116(d), which states the term "counterfeit mark" means:

> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered;
>
> \* \* \*

> but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture[r] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

15 U.S.C. § 1116(d)(1)(B).

It appears that the Sixth Circuit views trademark counterfeiting as a separate cause of action, having stated that "[t]o recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." *Laukus v. Rio Brands, Inc.*, 391 Fed. Appx. 416, 425 (6th Cir. 2010).[1] Because Rosta has not alleged a separate claim for federal trademark counterfeiting, there is no basis for an award of treble damages or statutory damages under 15 U.S.C. § 1117(b) and (c). Accordingly, Lovejoy's motion to dismiss should be granted to the extent that it seeks to strike Rosta's claim for damages related to federal trademark counterfeiting.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that Lovejoy's motion to dismiss (docket no. 9) be **GRANTED** as to Rosta's claim for contributory trademark infringement

---

[1] The Court notes that not all courts agree that the use of a counterfeit mark is a separate cause of action. *See, e.g.*, *All Star Championship Racing, Inc. v. O'Reilly Automotive Stores, Inc.*, 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) ("[T]he use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including seizure of the goods so marked, § 1116(d)(1)(A); treble damages, § 1117(b); the awarding of statutory damages, § 1117(c); and attorney's fees, § 1117(a).").

(Count II), **GRANTED** as to Rosta's request for treble damages and statutory damages under 15 U.S.C. § 1117(c), and **DENIED** in all other respects.

Dated:  March 29, 2017                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).